b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

SHIRLEY DUCOTE, ET AL.,                CIVIL DOCKET NO. 1:23-CV-00672
Plaintiffs

VERSUS                                 DISTRICT JUDGE DRELL

CATERPILLAR, INC., ET AL.,
Defendants                             MAGISTRATE JUDGE PEREZ-MONTES

---

REPORT AND RECOMMENDATION

Plaintiffs Shirley Ducote ("Shirley"), Austin Ducote ("Austin"), and Shelby Ducote ("Shelby") (collectively, "the Ducotes") filed a Motion to Remand. ECF No. 9. Defendant Louisiana Machinery Company, L.L.C. ("Louisiana Machinery") filed a Motion to Dismiss. ECF No. 34.

Because Defendants have shown that Plaintiffs have no reasonable possibility of recovery under state law against Louisiana Machinery, Louisiana Machinery's Motion to Dismiss (ECF No. 34) should be GRANTED, and Plaintiffs' Motion to Remand (ECF No. 9) should be DENIED.

I.    Background

In April 2023, the Ducotes filed a wrongful death and survival action in the Louisiana 12th Judicial District Court in Avoyelles Parish for the death of Randy Ducote (husband of Shirley and father of Austin and Shelby). ECF No. 1-1 at 1. The named Defendants are Caterpillar, Inc. ("Caterpillar") and Louisiana Machinery. ECF No. 1-1 at 1. Randy Ducote, an employee of the Avoyelles Parish Police Jury ("Police Jury"), was run over and killed by an unmanned Caterpillar D3 bulldozer at

the Avoyelles Parish dump site. ECF No. 1-1 at 2. The bulldozer had been sold to the Police Jury by Louisiana Machinery. Plaintiffs allege the bulldozer was defective because it moved forward despite the absence of an operator in the operator's seat. ECF No. 1-1 at 2. Plaintiffs seek monetary damages.

Caterpillar removed in May 2023, asserting diversity jurisdiction. ECF No. 1. In its Notice of Removal, Caterpillar does not state whether or not Louisiana Machinery consented to removal, instead contending that Louisiana Machinery was improperly joined.[1] ECF No. 1.

Plaintiffs are Louisiana citizens. ECF No. 1 at 2. Caterpillar is a Delaware corporation with its principal place of business in Texas. ECF No. 1 at 3. Louisiana Machinery is a Louisiana limited liability company. ECF No. 1 at 3. Its members are Robert D. Webb, Jr. ("Webb"), a Louisiana citizen, and the Estate of Clark G. Boyce, Jr. (of which Webb is the "trustee").

The Ducotes filed a Motion for Remand, contending Louisiana Machinery is a non-diverse defendant. ECF NO. 9. Louisiana Machinery filed a Motion to Dismiss, asserting improper joinder.[2] ECF No. 34.

---

[1] 28 U.S.C. § 1446(b)(2)(A)–When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

[2] Due to a clerical error, Louisiana Machinery's attorneys were not added to the docket when Caterpillar responded to the Court's Removal Order and included them in the list of parties and their attorneys. ECF No. 13 at 1-2. Louisiana Machinery was served with Plaintiff's Petition (ECF No. 13-1 at 18) and received a copy of Caterpillar's Notice of Removal from Caterpillar (ECF No. 1 at 10), but did not receive any copies, notices, or orders from this Court through Document 32. All "certificates of service" filed with documents subsequent to

## II.    Law and Analysis

### A.    Motion to Dismiss Standards

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

The court must view all well-pleaded facts in the light most favorable to the plaintiff.  *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).  Although a district court ruling on a motion to dismiss is required to accept all well-pleaded facts as true, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

---

Document 3 (Caterpillar's diversity jurisdiction disclosure statement) show that service was made on all "counsel of record," which did not include the attorneys for Louisiana Machinery. It is noted that Louisiana Machinery's attorneys did not make an inquiry to the Court about why they were not receiving any documents for this case from the Court.  It is further noted that Plaintiffs have never requested that a default judgment be entered against Louisiana Machinery.

Louisiana Machinery made its first appearance in this case after it was served with all pleadings and afforded an opportunity to file a brief in response to Plaintiff's Motion to Remand.  ECF No. 33.

**B.**    <u>Rule of Unanimity</u>

As noted above, Caterpillar apparently removed without obtaining consent from Louisiana Machinery.  Louisiana Machinery neither joined in the removal, nor provided written consent to removal.

Pursuant to 28 U.S.C. § 1446(b)(2)(A), "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  All served defendants must join in the petition for removal within thirty days of service on the first defendant, and if consent of all served defendants is not timely obtained, the removal is procedurally defective.[3]  *See Doe v. Kerwood,* 969 F.2d 165, 167, 169 (5th Cir. 1992); *see also Ortiz v. Young*, 431 Fed. Appx. 306, 307 (5th Cir. 2011), *cert. den.*, 565 U.S. 1234 (2012).  This "rule of unanimity" requires that there be "some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have the authority to do so, that it has actually consented to such action"; each defendant does not need to sign the notice of removal to effect removal.  *See Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254, 1262 n. 11 (5th Cir. 1988); *see also Moreno Energy, Inc..*, 884 F. Supp. 2d at 582–83.  There need only be some timely filed written indication from each defendant

---

[3] A defendant is free to amend a notice of removal within the thirty-day period, but once that thirty-day period has expired, amendment is not available to cure a substantive defect in removal proceedings. *See Moody v. Commercial Insurance Co. of Newark, N.J.,* 753 F. Supp. 198, 201–02 (N.D. Tex. 1990); *see also Moreno Energy, Inc. v. Marathon Oil Co.*, 884 F. Supp. 2d 577, 582 (S.D. Tex. 2012).

4

or from someone purporting to represent that defendant formally. *See Getty Oil Corp.,* 841 F.2d at 1262 n. 11; *Moreno Energy, Inc.,* 884 F. Supp. 2d at 582.

There are three well-recognized exceptions to the rule or unanimity: (1) where the defendant was not yet served with process at the time the removal petition was filed; (2) where a defendant is merely a nominal, unnecessary or formal party-defendant; and (3) where the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c*). See Jones v. Houston Independent School District*, 979 F.2d 1004, 1007 (5th Cir. 1992)); *see also, Moreno Energy, Inc.* 884 F. Supp. 2d at 582; *Moody,* 753 F. Supp. 198, 200 (N.D. Tex. 1990). Defendants contend that Louisiana Machinery is improperly joined as a defendant, so the second exception applies here.

## C.     Louisiana Machinery is improperly joined.

### 1.     The law as to improper joinder.

Federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution or legislation. *See Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). There is a presumption against subject matter jurisdiction, which must be rebutted by the party bringing an action to federal court. *See Coury*, 85 F.3d at 248. The party seeking to invoke the jurisdiction of the federal court has the burden of proving that jurisdiction exists. *See Aetna Casualty & Surety Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

Remand is proper if at any time the Court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed, and any doubt as to the propriety of removal must be resolved in favor of remand. *See Gasch v. Hartford Accident & Indemnity Co.,* , 281–82 (5th Cir. 2007).

The general-diversity statute permits federal district court jurisdiction over suits for more than $75,000 between citizens of different states. *See* 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Stangel v. A-1 Freeman North America, Inc.*, 64 Fed. Appx. 416, *1 (5th Cir. 2003). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Dir. 1998).

Ordinary diversity jurisdiction requires complete diversity—all of the plaintiffs must be citizens of different states than all of the defendants. *See Williams v. Homeland Insurance Co. of New York*, 18 F.4th 806, 812 (5th Cir. 2021) (*citing Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)). If a non-diverse defendant is improperly joined, however, a district court can disregard the citizenship of that defendant for the purposes of evaluating its jurisdiction. *Id.* A non-diverse defendant is *improperly joined* such that its citizenship can be ignored for purposes of evaluating diversity jurisdiction if the removing party shows either that: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court. *See Williams*, 18

6

F. 4th at 812 (*citing Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573 (5th Cir. 2004)), cert. den., 544 U.S. 992 (2005); *see also Ticer v. Imperium Ins. Co.*, 20 F.4th 1040, 1045 (5th Cir. 2021). It is the removing party's burden to establish improper joinder. *See Williams*, 18 F. 4th at 812 (*citing Smallwood*, 385 F.3d at 574).

Defendants rely on the second prong. The threshold question is whether there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. The burden of proof is on the removing party. *See Gasch*, 491 F.3d at 281. In deciding whether a party was improperly joined, a court resolves all contested factual issues and ambiguities of state law in favor of the plaintiff. *See Gasch*, 491 F.3d at 281.

A court may predict whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. *See Smallwood*, 385 F.3d at 573. However, there are cases in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *See Smallwood*, 385 F.3d at 573.[4]

---

[4] A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. *See Smallwood*,

Pursuant to Fed. R. Civ. P. rule 12(b)(6), "a complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), *cert. den.,* 580 U.S. 990 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C.*, 819 F.3d at 174.

If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, there is no improper joinder. *See Travis v. Irby,* 326 F.3d 644, 648 (5th Cir. 2003). In determining whether there is an arguably reasonable basis for the plaintiff's claims, a district court must resolve any contested issues of material fact and any ambiguity or uncertainty in the controlling state law in the plaintiff's favor. *See Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir. 1999). If there is any possibility the plaintiff has stated a cause of action against any

---

385 F.3d at 574. "In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.* "The purpose of the inquiry is an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined." *Id.* "[A]ny piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity." *Id.* "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.*

non-diverse defendant, the court must conclude that joinder is proper, thereby defeating diversity and requiring the case to be remanded. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.,* 99 F.3d 746, 751 (5th Cir. 1996).

If a defendant was improperly joined, however, then the lack of diversity between that defendant and the plaintiff is not considered when determining diversity jurisdiction. *See McKee v. Kansas City Southern Railway Co.,* 358 F.3d 329, 333 (5th Cir. 2004) ("Diversity jurisdiction requires complete diversity between the parties, however, such diversity cannot be destroyed by a plaintiff fraudulently joining a non-diverse defendant."); *see also Trevino v. State Farm Lloyds*, 207 Fed. Appx. 422, 423 (5th Cir. 2006).

### 2. <u>Plaintiffs have no reasonable possibility of recovery against Louisiana Machinery under state law.</u>

 Defendants contend that Plaintiffs cannot establish a cause of action against Louisiana Machinery under state law.  The Court agrees.

Plaintiffs argue that Defendants have failed to carry its burden of proving Louisiana Machinery lacked actual knowledge of the danger posed by the bulldozer, that it had constructive knowledge of the danger, that it had a duty to warn, and that the presence of the operator's manual in the bulldozer did not satisfy its duty to warn.

### a. <u>The law as to the liability of a non-manufacturer seller.</u>

The Court determines whether there was a right to remove by examining the plaintiff's pleading at the time of the petition for removal. *See Ayala v. Enerco Group,*

*Inc.,* 569 Fed. Appx. 241, 245 (5th Cir. 2014) (citing *Cavallini v. State Farm Mutual Auto Insurance Co.,* 44 F.3d 256, 264 (5th Cir. 1995)). When considering improper joinder specifically, "[p]ost-removal filings may not be considered ... when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Ayala,* 569 Fed. Appx. at 245 (5th Cir. 2014) (citing *Griggs,* 181 F.3d at 700). Accordingly, the Court must examine Plaintiffs' ability to recover against Louisiana Machinery based on the claims in the original state-court pleading. *See id.*

In a diversity case, Louisiana substantive law applies. *See Ayala,* 569 Fed. Appx. at 245 (citing *Seacor Holdings Inc. v. Commonwealth Ins. Co.,* 635 F.3d 675, 680 (5th Cir. 2011)). The Louisiana Product Liability Act ("LPLA") "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. However, the LPLA does not provide a cause of action against sellers of products not falling under the LPLA's definition of "manufacturer." *See* La. R.S. 9:2800.53; *see also Ayala,* 569 Fed. Appx. at 245.

Thus, any responsibility Louisiana Machinery would have for tort damages would necessarily arise under its role as a non-manufacturing seller. *See Ayala,* 569 Fed. Appx. at 245 (citing *Alexander v. Toyota Motor Sales, U.S.A.,* 123 So.3d 712, 714 (La. 2013)). "A non-manufacturer/seller in some instances has a duty to warn a purchaser of defects and/or dangerous propensities in the products he uses. In the case of a defective product, i.e., one which is unreasonably dangerous in normal use,

10

the non-manufacturer/seller can be held liable for damages in tort only if he knew or should have known that the product was defective and failed to declare the defect to the purchaser." *Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 (La. App. 1 Cir. 9/23/05), 923 So.2d 118, 123, *writ den.,* 2005-2318 (La. 3/10/06),  925 So.2d 519 (citing *Hopper v. Crown,* 555 So.2d 46, 48 (La. App. 1st Cir.1989), *reversed on other grounds,* 558 So.2d 1117 (La. 1990), and *Thomasson v. A.K. Durnin Chrysler–Plymouth, Inc.,* 399 So.2d 1205, 1208 (La. App. 1st Cir. 1981)); *see also Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413–15 (5th Cir. 1993), *cert. den.*, 510 U.S. 1043 (1994); *Labarre v. Bienville Auto Parts, Inc.,* 2022 WL 293250, *5 (E.D. La. 2022); *Bruno v. BRD US, Inc.,* 2020-233 (La. App. 3d Cir. 3/17/21), 315 So.3d 969, 974, *writ den.,* 2021-C-00900 (La. 10/19/21), 326 So.3d 262; *Tunica-Bioloxi Indians of Louisiana v. Pecot,* 2006 WL 1228902, *3 (W.D. La. 2006).

"[A] non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects."  *Adams*, 923 So.2d at 123 (citing *Nelton v. Astro–Lounger Manufacturing Co., Inc.,* 542 So.2d 128, 131 (La. App. 1st Cir. 1989); *Harris v. Atlanta Stove Works, Inc.,* 428 So. 2d 1040, 1043 (La. App. 1st Cir.), *writ den.,* 434 So.2d 1106 (La. 1983)).  "There is no duty to warn against dangers which are obvious or of which the buyer should be aware."  *State Farm v. Norcold Inc.*, 2008 WL 4853030, at *2 (W.D. La. 2008) (citing *Delanzo v. ABC Corp.,* 572 So.2d 648, 651 (La. App. 5th Cir. 1990) ("There is no duty to warn about dangers which are common knowledge or which are obvious to the user.")).

Also, "a non-manufacturer vendor who holds the product out to the public as its own may be classified as a 'professional vendor' and may have the same responsibility as a manufacturer." *Adams*, 923 So.2d at 123 (citing *Chappuis v. Sears Roebuck & Co.,* 358 So.2d 926, 930 (La. 1978)); *see also Kelley*, 992 F.2d at 1413–15; *Labarre,* 2022 WL 293250 at *5; *Tunica-Bioloxi Indians of Louisiana,* 2006 WL 1228902 at *3. A "professional vendor" vouches for the product by holding it out as his own, or the product's size, volume and merchandising practices render him responsible to the same extent as a manufacturer, and he is thereby presumed to know the defects of his wares. *See Powers v. Beacon CMP Corp.*, 2016 WL 4411363, at *5 (W.D. La. 2016), *report and recommendation adopted,* 2016 WL 4421196 (W.D. La. 2016) (citing *Chappuis*, 358 So.2d at 930; *Hoerner v. ANCO Insulators, Inc.*, 2000-CA-2333 (La. App. 4th Cir. 1/23/02), 812 So.2d 45, 59-60, *writs den.*, 2002-C-0935, -0965, -0967, -0972 (La. 6/21/02), 819 So.2d 1023, 1024). "A 'professional vendor is a retailer who does more than simply sell a certain product or products; it must engage in practices whereby it is capable of controlling the quality of the product'; the doctrine was not intended to impose 'liability on all retailers who are simply in the business of selling a product.'" *Powers*, 2016 WL 4411363 at *5 (citing *Nelton*, 542 So.2d at 132).

Thus, "[u]nder Louisiana tort law, to establish the liability of a non-manufacturing seller of a product, 'three requirements must be met: First, the product sold by [Louisiana Machinery] must be defective. Second, [Louisiana

Machinery] must have had actual or constructive knowledge that the product it sold was defective.  Lastly, [Louisiana Machinery] must have failed to declare the defect." *Ayala,* 569 Fed. Appx. at 245 (citing *Alexander,* 123 So. 3d at 714).

"La. R.S. 9:2800.55 provides that a product is unreasonably dangerous in construction or composition if, 'at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.'" *Morris v. United Services Automobile Association*, 32,528 (La. App. 2 Cir. 2/18/00), 756 So. 2d 549, 558.  "It is incumbent, therefore, for a claimant under this section to demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *Morris*, 756 So.2d at 558 (citing Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 La. L. Rev. 565, 593 (1989); Gallagan, *The Louisiana Products Liability Act: Making Sense of It All,* 49 La. L. Rev 629, 648 (1989)).

        **b.**    <u>The assertions in Plaintiffs' Petition at the time of removal.</u>

In their Petition, Plaintiffs assert:

On or about October 27, 2022, decedent, Randy Ducote, was operating a 2022 Caterpillar D3 Bulldozer at the Avoyelles Parish Dump . . . . While operating the bulldozer, Randy Ducote fell from the seat.  Despite having no operator present, the bulldozer continued moving forward, dragging Randy Ducote to the front of the bulldozer, ultimately crushing

him.    Unmanned, the bulldozer continued in a forward direction, running over Randy Ducote, until tracking into nearby trees.

ECF No. 1-1 at 1-2, ¶¶ 3-5.

Plaintiffs further contend that Caterpillar had "actual knowledge of defects in their equipment, including unintended movement and movement without the presence of an operator, since the 1960's." ECF no. 1-2 at 2, ¶ 6.   Plaintiffs contend the bulldozer is defective due to: "1. [T]he tendency of this bulldozer to have unintended movements, without the presence of an operator; 2. The lack of any mechanism to prevent unintended movement of the bulldozer without the presence of an operator; 3. The failure to implement safety measures known to Caterpillar, Inc., preventing the unintended movement of bulldozers; 4. The lack of warning devices indicating the likelihood and dangers of unintended movement . . .; 5. The lack of any warning, directions, instructions, or notices displayed or placed in, on, or about the bulldozer that adequately alerts the user of the dangers of leaving the seat and/or unintended movement of the equipment."  ECF No. 1-1 at 4-5, ¶ 12.

As to Louisiana Machinery, Plaintiffs contend in their Petition:

7.  The bulldozer made subject of this lawsuit was sold to the Avoyelles Parish Police Jury by Louisiana Machinery Company, L.L.C., who knew, or in the exercise of reasonable care, should have known of the dangers posed by the equipment sold to the Avoyelles Parish Police Jury, yet made no efforts to train its operators or otherwise warn them of the unintended movement of this machine and the dangers associated therewith.

13.  Upon information and belief, plaintiffs allege that the proximate cause of the subject incident occurred as a result of the negligence and/or

14

fault of the Louisiana Machinery Company, L.L.C., including but not limited to:

1. Delivering this equipment to the Avoyelles Parish Police Jury without properly instructing Randy Ducote and/or any potential operators as to the proper safety operating procedures of the subject equipment;

2. In failing to warn Randy Ducote and/or any potential operators of the dangers associated with the operation of this equipment without proper safety equipment; and

3. In failing to warn Randy Ducote and/or any potential operators as to the dangers of the unintended movement of the equipment and the lack of an operator presence system.

ECF No. 1-1 at 2, 5.

### c.    Defendants' evidence.

Caterpillar attached two affidavits from Louisiana Machinery employees to its Notice of Removal.  Tim Leger ("Leger") states in his affidavit that he is a Machinery Sales Representative for Louisiana Machinery.  Leger states the bulldozer involved in the incident was a 2022 Caterpillar Model D3LGP track-type bulldozer (S/N XKY02892) that Louisiana Machinery sold to the Police Jury on June 28, 2022.  ECF No. 1-2 at 1 & 3-7.  Leger further states that: (1) Louisiana Machinery is a distributor of Caterpillar heavy equipment; (2) it does not design or manufacture heavy equipment; (3) it did not have any control or influence over the design, manufacture, or preparation of warning or instruction for the bulldozer herein; and (4) it did not design or manufacture the bulldozer herein, nor did it every represent that it had done so.  ECF No. 1-2 at 1 & 2.

Leger also states that Louisiana Machinery has not received any reports of, and is unaware of any incidents involving, this model of bulldozer, other than Ducote's, in which the operator fell from the seat and was run over by the machine. ECF No. 1 at 2. Louisiana Machinery was notified of the accident on the day it happened and photographed the bulldozer the same day. ECF No. 1-2 at 2. The photographs show the "Operation and Maintenance Manual" is visible in the operator's seatback storage pocket. ECF No. 1-2 at 2 & 9-11. Leger states the Police Jury never requested that Louisiana Machinery provide training in the operation of the bulldozer to Mr. Ducote or any other person. ECF No. 1-1 at 2.

Ralph Sanders ("Sanders") states in an affidavit that he is employed by Louisiana Machinery as a Product Service Representative. ECF No. 1-3 at 1. Sanders states that he delivered the bulldozer to the Police Jury Yard on about June 28, 2022, and performed a "walk around" with two Police Jury employees to explain the basic functions of the machine, and point out the machine's fluid and lubrication points. ECF No. 1-3 at 1. Sanders states that no one asked Louisiana Machinery to provide training to Mr. Ducote or any other person as to the operation of the Caterpillar bulldozer. ECF No. 1-3 at 1. When Sanders delivered the bulldozer, the "Operation and Maintenance Manual" was in a weather-proof package in the storage area on the operator's seatback and all of the manufacturer's warning labels and decals were properly affixed to the machine. ECF No. 1-3 at 2. Sanders points out that both the manual and decal on the left-hand cab post, in view of the operator,

16

warn that "[a] seat belt should be worn at all times during machine operation to prevent serious injury or death in the event of an accident or machine overturn. Failure to wear a seat belt during machine operation may result in serious injury or death." ECF No. 1-3 at 2.

Sanders also states the manual shows the bulldozer was equipped with an "Operator 'Not Present' System," and explains how and under what conditions the system activates. ECF No. 1-3 at 2. The seat belt has no connection to the operator "Present" status. ECF No. 1-3 at 2. The operating manual for the bulldozer is attached to Sanders's affidavit. ECF No. 1-3 at 4.

### d.    Plaintiffs' evidence.

Plaintiffs submitted an affidavit from Kevin Bordelon ("Bordelon"), who states he is employed by the Police Jury as the Civil Works Director. ECF No. 9-4. Bordelon states his duties include overseeing the purchase and handling of heavy equipment. ECF No. 9-1. Prior to his employment by the Police Jury, Bordelon worked in the private sector for 35 years, managing construction sites and companies. ECF No. 9-4. Bordelon was involved in the purchase of the 2022 Caterpillar bulldozer, which was delivered to the Avoyelles Parish Dump. ECF No. 9-4. Bordelon states he was not present at the time of delivery. ECF No. 9-4. But during delivery of similar equipment for which Bordelon was present, the Louisiana Machinery representative provided a brief overview of the equipment prior to leaving. ECF No. 9-1. The

overview is short and usually includes maintenance information, such as oil changes and lubrication.  ECF No. 9-4.

Bordelon further states that he was not told of any dangers associated with the bulldozer, including the danger of someone falling from their seat and being dragged and run over by the machine.  ECF No. 9-4.  Bordelon has never heard someone from Louisiana Machinery explain what happens if a driver falls from the operator's seat, or explain what to do if the driver falls and the machine continues to move.  ECF No. 9-4.  Bordelon has personally heard Louisiana Machinery employees provide warnings for safe start up and operation.  ECF No. 9-4.

Plaintiffs also provided an affidavit from Kenneth Friels ("Friels"), who is employed by the Police Jury as an Assistant Superintendent.  ECF No. 9-5.  Friels's duties include being present when certain machines are delivered.  ECF No. 9-5.  Friels was present when the 2022 Caterpillar bulldozer was delivered by Louisiana Machinery.  ECF No. 9-5.  Friels states that no one from Louisiana Machinery warned of any dangers associated with the bulldozer, including the driver falling from the seat and being dragged and run over by the machine.  ECF No.9-5.  Friels has never heard anyone from Louisiana Machinery explain what happens if a driver falls from the operator's seat and the machine continues to move.  ECF No. 9-5.  Friels states that, at the time of the delivery of the bulldozer, Louisiana Machinery performed their short walk-around, lasting about five minutes, for the purpose of pointing out maintenance-related issues including grease points.  ECF No. 9-5.  No information as

to driver safety was given, and no one stated that if a driver was dislodged from the bulldozer there was a danger that the bulldozer would continue to operate.  ECF No. 9-5.

### e.    Louisiana Machinery is not a professional vendor.

Plaintiffs have neither argued nor shown that Louisiana Machinery was a "professional vendor" with control over the design, construction, or quality of the Caterpillar bulldozer.

Leger's affidavit shows that Louisiana Machinery did not hold itself out to be a "professional vendor."  Louisiana Machinery did not exercise any degree of control over the design and quality of the Caterpillar machines it sold.  Leger and Sanders both stated that Louisiana Machinery did not control the quality of Caterpillar products.

Therefore, Louisiana Machinery is not liable as a professional vendor.

### f.    Louisianan Machinery is not liable for failing to train the Police Jury employees in the proper operation of the bulldozer.

The affidavit from Sanders shows that, upon delivery of a Caterpillar machine, a Louisiana Machinery employee performed a cursory walk-around inspection of the machine and briefly indicated maintenance points to the customer.  Affidavits from employees of the Police Jury, Bordelon, and Friels, show the delivery procedure outlined by Sanders was followed upon delivery of the Caterpillar bulldozer, and that no training had been requested or contracted for by the Police Jury.

Because no training was requested or agreed upon, Louisiana Machinery is not liable for failing to provide training in the proper use and operation of the bulldozer to the Police Jury employees.

### g. Louisiana Machinery did not have a duty to warn about the proper functioning of the "operator not present system."

Plaintiffs argue that Louisiana Machinery had constructive knowledge of the "defect" in the "operator not present system," and that it had a duty to warn the PolicJury employees of that defect.

Plaintiffs contend that, while operating the bulldozer, Ducote fell from the seat and the bulldozer continued to move forward.  ECF No. 1-1 at 2, ¶4.  Unstated but implicit in Plaintiffs' assertions are two further facts: (1) Ducote was not wearing the seatbelt provided; and (2) the bulldozer was in forward gear when he fell from the seat.  Plaintiffs contend the bulldozer should have detected the absence of an operator in the seat and automatically stopped moving.  Plaintiffs do not explain how it should have stopped moving – whether by placing itself out of gear, or shutting itself down.  Plaintiffs simply contend the "operator not present system" was defective.

### (1) Louisiana Machinery did not have a duty to warn about the danger of not wearing the seatbelt.

It is apparent that Louisiana Machinery did not have a duty to warn Ducote of the danger of not wearing a seat belt – that danger is obvious and commonly known.  Additionally, Defendants shows, in Sanders's affidavit (ECF No. 1-3 at 2), that a decal was affixed to a post, in view of the operator, warning that failure to wear a seatbelt

"during operation of the machine" could result in "serious injury or death in the event of an accident or machine overturn."

Further, the Operator's Manual states (ECF No. 1-3 at 42): "Operation.  Only operate the machine while you are in a seat.  The seat belt must be fastened while you operate the machine."  Because a warning to wear the seatbelt was posted on the machine within the operator's view, Louisiana Machinery did not have a duty to verbally warn the Police Jury employees that operating the bulldozer without wearing the seatbelt could be dangerous.

(2)    **<u>The "operator not present system" was not intended to function while the bulldozer was in gear.</u>**

Plaintiffs also contend Louisiana Machinery should have warned Ducote that the bulldozer has a tendency to have "unintended movements without the presence of an operator," and there was no mechanism to prevent such unintended movement.  ECF No. 1-1 at 4-5, ¶ 12.  Plaintiffs contend the bulldozer is defective because there is no mechanism to prevent unintended movement of the bulldozer without the presence of an operator, although an alternative design including such a safety device existed.  ECF No. 1-1 at 3, ¶ 11 and 4, ¶ 12.

As Louisiana Machinery points out in its brief (ECF No. 34 at 5), however, the "operator not present system" is designed to prevent the machine from being accidentally *placed in gear*.  The "operator not present system" is explained in the Operator's Manual (ECF No. 1-3 at 69) as follows:

21

This machine is equipped with an Operator "Not Present" System. This system prevents the machine from being accidentally put in gear if an operator is not present.  The system considers the operator to be "Present" if any of the following conditions are met.

     • The seat cushion sensor is activated.

     • The operator is pressing down the decel/brake pedal to any position other than the fully released position.

     • The steering and transmission control is in the Forward or Reverse position with track speed detected.

If none of these conditions are met, the operator is considered "Not Present."  Then, the system will lock the transmission in neutral, apply the parking brake, and cause the parking brake light on the dash to light.

Moreover, the manual twice states (ECF No. 1-3 at 102and at 113): "Note: When the machine is moving and the operator raises from the seat, the power train systems will not shut down until the machine is stopped."

Thus, according to the operating manual, the "operator not present system" did not function if the machine was in forward or reverse gear.  When Ducote fell from the seat, the "operator not present system" did not lock the transmission in neutral and apply the parking brake because the bulldozer was in forward gear, which signaled that the operator *was* present.  The "operator not present system" on this bulldozer is intended to *prevent* the machine from being inadvertently put into forward or reverse gear (causing movement) when an operator is not present.  It does *not stop* the machine from moving when it is *already* in forward or reverse gear, as it apparently was in this instance.

22

Because Plaintiffs have not shown the operator not present system failed to operate as intended, they have not shown there was a defect that Louisiana Machinery had a duty to warn the Police Jury employees about.

### (3)    Louisiana Machinery did not have a duty to warn that the bulldozer would move when it was in gear.

Plaintiffs complain the bulldozer was unreasonably dangerous because it moved when there was no operator in the seat, and Ducote had not been warned that it could do so.  However, it is common knowledge that a driver/operator should not exit a moving vehicle–if you turn on a motor vehicle, put it in gear, then exit the vehicle, the vehicle *will move* even though there is no one in the driver's seat.  Although Plaintiffs allege that Ducote did not intentionally exit the driver's seat when the bulldozer was in gear, the result is the same – the bulldozer continued to move because it was in gear.  And as set forth above, the operator's manual states–twice–that if the bulldozer is in gear, the bulldozer will not stop if the driver leaves the seat.

Louisiana Machinery had no duty to warn the Police Jury employees that the bulldozer would move when it was in gear, regardless of whether an operator was in the seat, because that warning is set forth twice in the operator's manual and such an event is common knowledge.

h.  **Defendants have shown that Louisiana Machinery is improperly joined.**

Defendants have shown that Plaintiffs have no reasonable basis for recovery against Louisiana Machinery under state law.  Therefore, Defendants have carried their burden of proving that Louisiana Machinery was improperly joined.

## III.  Conclusion

Based on the foregoing, IT IS RECOMMENDED that Plaintiffs' Motion to Remand (ECF No. 9) be DENIED.

IT IS FURTHER RECOMMENDED that Louisiana Machinery's Motion to Dismiss (ECF No. 34) be GRANTED, and that Plaintiffs' claims against it be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ.

P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _8th_ day of March 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge

25